UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| KEELY R. SMITH, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | CIVIL ACTION NO. _____ | |
| § | | |
| THE UNIVERSITY OF TEXAS - § | | |
| RIO GRANDE VALLEY, and, MERCY § | | |
| AZEKE, VERA RUIZ, MICHAEL § | | |
| JAMES, and GUY BAILEY, in their § | | |
| official capacities, § | JURY DEMANDED | |
|     Defendants. § | | |

**Plaintiff's Original Complaint**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

NOW COMES **KEELY R. SMITH**, Plaintiff, and complains of and against **THE UNIVERSITY OF TEXAS - RIO GRANDE VALLEY**, **DR. MERCY AZEKE**, **VERA RUIZ**, **MICHAEL JAMES**, and **GUY BAILEY**, Defendants, and for cause of action shows:

**I. Introduction**

1. Defendants **THE UNIVERSITY OF TEXAS - RIO GRANDE VALLEY** ("**UTRGV**"), **MERCY AZEKE, VERA RUIZ**, **MICHAEL JAMES**, and **GUY BAILEY**, discriminated against Plaintiff **KEELY R. SMITH** ("**SMITH**") on the basis of her disability in regard to job application procedures, the hiring, advancement, or discharge of Plaintiff, job training, and other terms, conditions, and privileges of employment. Defendants harassed and excluded Plaintiff **SMITH** from employment at **UTRGV**. Additionally, Defendants **UTRGV, AZEKE, RUIZ, JAMES,** and **BAILEY** retaliated against Plaintiff **SMITH** in response to her complaints about harassment and in response to her opposition to being excluded from

employment at **UTRGV**.

## II. Parties

2. Plaintiff **KEELY R. SMITH** is a resident of Hidalgo County, Texas.

3. Defendant **GUY BAILEY** is the President of **UTRGV**.

4. Defendant **DR. MERCY AZEKE** is the Director of Academic Advising and Support Services for **UTRGV**'s **SCHOOL OF MEDICINE**.

5. Defendant **VERA RUIZ** is the Human Resources Manager of **UTRGV**'s Division of Health Affairs.

6. Defendant **MICHAEL JAMES** is the Chief Human Resources Officer at **UTRGV**.

7. Defendant **UTRGV** is a state agency and institution of higher education located in Hidalgo County, Texas.

## III. Jurisdiction and Venue

8. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1337.

9. The federal claims in this action are authorized and instituted pursuant to 42 U.S.C. § 12117 (a), and 29 U.S.C. § 794a, which invoke the powers, remedies, and procedures set forth in 42 U.S.C. § 2000e-5.

10. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

12. **SMITH** invokes Section 16.064 of the Texas Civil Practice & Remedies Code which suspends the statute of limitations for sixty days after dismissal of a suit becomes final when an

action is dismissed for lack of jurisdiction. **SMITH** filed suit on July 20, 2021, against **UTRGV** on July 20, 2021, in the 389th Judicial District Court of Hidalgo County, Texas in Cause No. C-2845-21-H. The action was dismissed for lack of jurisdiction on September 21, 2022. On July 18, 2024, the Court of Appeals Thirteenth District of Texas Corpus Christi - Edinburg affirmed the dismissal for lack of jurisdiction. **SMITH**'s petition for review in Case No. 24-0890 was denied by the Supreme Court of Texas on February 21, 2025.

### IV. Service Instructions

13. Plaintiff **SMITH** is a resident of Hidalgo County, Texas.

14. Defendant Dr. **MERCY AZEKE** is located in Hidalgo County, Texas and may be served through **UTRGV**'s Office of Legal Affairs at Rio Bank - McAllen Suite 5.532, 701 E. Expressway 83, McAllen, Texas 78501.

15. Defendant **VERA RUIZ** is located in Hidalgo County, Texas and may be served through **UTRGV**'s Office of Legal Affairs at Office of Legal Affairs at Rio Bank - McAllen Suite 5.532, 701 E. Expressway 83, McAllen, Texas 78501.

16. Defendant **MICHAEL JAMES** is located in Hidalgo County, Texas and may be served through **UTRGV**'s Office of Legal Affairs at Rio Bank - McAllen Suite 5.532, 701 E. Expressway 83, McAllen, Texas 78501.

17. Defendant **GUY BAILEY** is located in Hidalgo County, Texas and may be served through **UTRGV**'s Office of Legal Affairs at Office of Legal Affairs at Rio Bank - McAllen Suite 5.532, 701 E. Expressway 83, McAllen, Texas 78501.

18. Defendant **UTRGV** is located in Hidalgo County, Texas and may be served through its Office of Legal Affairs at Office of Legal Affairs at Rio Bank - McAllen Suite 5.532, 701 E.

Expressway 83, McAllen, Texas 78501.

## V. Parties

19. Plaintiff **SMITH** is a person with a disability. **SMITH** has attention deficit hyperactivity disorder, commonly referred to as "ADHD."

20. Plaintiff **SMITH** is a person with a physical or mental impairment that substantially limits one or more major life activities, has a record of having said disability, and is regarded as having a disability within the meaning of the ADA, as amended, 42 U.S.C. § 12102.

21. As a result of her condition, Plaintiff **SMITH** is substantially limited in major life activities including, but not limited to, reading, concentrating, thinking, and communicating.

22. At all relevant times, **SMITH** was a qualified individual because she was able to perform the essential functions of the job she held at **UTRGV**, with or without reasonable accommodations.

23. Defendant **UTRGV** is an employer as defined by the ADA, 42 U.S.C. § 12111(5), and is also a covered entity as defined by the ADA, 42 U.S.C. § 12111(2). **UTRGV**'s programs and operations are additionally covered by 504 of the Rehabilitation Act, 29 U.S.C. § 794(b)(2)(A) because **UTRGV** receives federal financial assistance.

24. Defendant **MERCY AZEKE** is a director, manager, employee, and agent of **UTRGV**, and, thereby, is an employer of Plaintiff as defined by the ADA, 42 U.S.C. § 12111(5). Defendant **MERCY AZEKE** has the authority to recommend and/or the authority to hire, reinstate, integrate, and to prevent discrimination, harassment, exclusion, and blacklisting of **SMITH** at **UTRGV**.

25. Defendant **VERA RUIZ** is a manager, employee, and agent of **UTRGV**, and,

thereby, is an employer as defined by the ADA, 42 U.S.C. § 12111(5). Defendant **RUIZ** has the authority to recommend and/or the authority to hire, reinstate, integrate, and to prevent discrimination, harassment, exclusion, and blacklisting of **SMITH** at **UTRGV**.

26. Defendant **MICHAEL JAMES** is a director, officer, employee, and agent of **UTRGV**, and, thereby, is an employer as defined by the ADA, 42 U.S.C. § 12111(5). Defendant **JAMES** has the authority to recommend and/or the authority to hire, reinstate, integrate, and to prevent discrimination, harassment, exclusion, and blacklisting of **SMITH** at **UTRGV**.

27. Defendant **GUY BAILEY** is a principal, officer, director, employee, and agent, of **UTRGV** and is an employer as defined by the ADA, 42 U.S.C. § 12111(5). **GUY BAILEY** has the authority to hire, reinstate, integrate, and prevent the discrimination, harassment, exclusion, and blacklisting of **SMITH** at **UTRGV**.

28. Whenever in this Complaint it is alleged that Defendant **UTRGV** committed any act or omission, it is meant that **UTRGV**'s officers, directors, principals, vice-principals, agents, servants, or employees, including but not limited to **MERCY AZEKE, VERA RUIZ, MICHAEL JAMES,** and **GUY BAILEY**, committed such act or omission and that at the time such act or omission was committed, it was done with full authorization, ratification or approval of **UTRGV** or was done in the routine course and scope of employment of **UTRGV**'s officers, directors, principals, vice-principals, managers, agents, servants, or employees, including but not limited to, **MERCY AZEKE, VERA RUIZ, MICHAEL JAMES,** and **GUY BAILEY**.

### VI. Statement of Facts

29. Since 2008, Plaintiff **SMITH** worked for **UTRGV** as a research assistant, intern, counseling specialist, and an academic advisor.

30. On or about November 1, 2017, Plaintiff **SMITH** was hired as an academic advisor in the **UTRGV** School of Medicine.

31. Plaintiff **SMITH**'s direct supervisor in the role of academic advisor was Defendant Dr. **MERCY AZEKE**, who held the title of Director of Academic Advising and Student Support Services for **UTRGV**'s School of Medicine.

32. Shortly after commencing the academic advisor position under Dr. **AZEKE**, Plaintiff **SMITH** and Dr. **AZEKE** began to "clash."

33. Plaintiff **SMITH** asserts that Dr. **AZEKE** began to harass Plaintiff by suggesting that **SMITH** "lacked skills" and asking why Plaintiff was so "happy" and "full of energy" all the time.

34. **AZEKE** did not offer any training to Plaintiff **SMITH**.

35. Frustrated with the harassing treatment from Dr. **AZEKE**, on or around December 15, 2017, Plaintiff **SMITH** confronted Dr. **AZEKE** and told her that she had never been criticized so much in all of her years working in higher education and **SMITH** confessed to Dr. **AZEKE** that **SMITH** had ADHD and that she took medication to ameliorate the condition. Plaintiff told Dr. **AZEKE** that she nevertheless could do good work and make **AZEKE** proud.

36. Dr. **AZEKE** continued to intimidate and harass Plaintiff **SMITH**.

37. Dr. **AZEKE** harassed Plaintiff **SMITH** by making statements including, but not limited to: "you are too energized for me" and "you need to take your medication."

38. Plaintiff **SMITH** communicated with Dr. Adela Valdez, Associate Dean of Student Affairs at **UTRGV**'s School of Medicine about the issues with Dr. **AZEKE** due to the continued harassment.

39. After this, Dr. Valdez met with both Plaintiff **SMITH** and Dr. **AZEKE** to help clear the air between them. But Dr. Valdez did not advise Plaintiff **SMITH** to report her disability or any of her concerns to HR.

40. During this meeting, Dr. **AZEKE** alleged that Plaintiff **SMITH** was not meeting with enough School of Medicine students for academic advising.

41. Dr. **AZEKE**'s allegation that Plaintiff **SMITH** was not meeting with enough School of Medicine students was pretextual.

42. Plaintiff **SMITH** was not allowed to work with "high-risk" students - students who needed additional academic help and who were required to meet with academic advising. Those with whom **SMITH** could meet with - who were deemed "non high-risk" - were not required to go to academic advising. High-risk students met with Dr. **AZEKE** or other academic advisors.

43. Upon **SMITH** commencing her new position at the School of Medicine, Dr. **AZEKE** told Plaintiff **SMITH** to be mindful of the academic schedules of all School of Medicine students and to "not bother" them during stressful periods. All School of Medicine students were commonly known to be extremely busy due to their heavy course loads, critical exams, and other academic requirements such as quizzes, presentations, and other course work and were sometimes simply unable to make time to voluntarily meet with academic advisors, especially those who were "non high-risk."

44. Plaintiff **SMITH** was not granted access to Blackboard - a software program that allowed student schedules, course work, and academic progress to be monitored - in order to assist her with her job duties, until after her 90 day performance evaluation in which she raised the issue.

45. Plaintiff **SMITH**'s 90 day performance evaluation was for the period of November 1, 2017, through January 31, 2018, but it was not presented to Plaintiff until February 27, 2018.

46. Plaintiff **SMITH** disagreed with the evaluation in which Dr. **AZEKE** described the pretextual concerns mentioned above about not meeting with enough students and Plaintiff **SMITH** refused to sign the evaluation.

47. Dr. **AZEKE** signed the performance evaluation on March 1, 2018.

48. Sometime in late February 2018, or early March 2018, Plaintiff **SMITH** met with **UTRGV** Human Resources Manager **VERA RUIZ** to complain about harassment by Dr. **AZEKE** on account of **SMITH**'s disability.

49. Despite Plaintiff **SMITH**'s disagreement with the performance evaluation, **SMITH** was able to meet with approximately 90% of the students whom were assigned to her and who were not already meeting with another academic advisor.

50. Plaintiff **SMITH** continued her efforts to meet or exceed expectations.

51. Dr. **AZEKE** failed to make Plaintiff **SMITH** aware of relevant School of Medicine events. Plaintiff **SMITH** had to repeatedly ask Dr. **AZEKE** whether she could or should attend events related to her work - such as a "Welcome Back Weekend" for School of Medicine students in early April 2018.

52. Despite her efforts to perform well, on April 9, 2018, Plaintiff **SMITH** received a letter from Dr. **AZEKE** in which Dr. **AZEKE** communicated to **SMITH** that her employment was terminated due to an alleged failure to "maintain satisfactory work performance standards" during her probationary period.

53. Plaintiff **SMITH** immediately sought to appeal the allegations in the termination

letter on the same day, April 9, 2018. Plaintiff **SMITH** was told by **RUIZ** and **UTRGV** that she needed to resign or be discharged and, from the information received in a meeting involving **AZEKE** and **RUIZ**, **SMITH** understood that choosing a discharge rather than resignation was preferable in order to qualify for unemployment benefits. No one informed **SMITH** of **UTRGV**'s blacklisting policy that would apply to her if she chose discharge over resignation.

54. Plaintiff **SMITH** then met with **RUIZ** on or around April 23, 2018. **SMITH** complained to **RUIZ** that she continued to be harassed and bullied by **AZEKE** and **SMITH** told **RUIZ** that **AZEKE** had told **SMITH** "you will never work here again" because **SMITH** had complained about **AZEKE**.

55. At this same meeting, on April 23, 2018, **SMITH** expressed to **RUIZ** her concern about her termination overall, especially the wording, including the word "discharge" in her termination letter and material, and its effects upon **SMITH**'s ability to obtain other positions with **UTRGV**. **RUIZ** did not offer any information to Plaintiff **SMITH** about the appropriate procedures for **SMITH**'s grievance.

56. Plaintiff **SMITH** then applied for forty-seven other jobs at **UTRGV** for which she was qualified. **UTRGV**'s Human Resources Department was aware of Plaintiff's disability when the applications were made.

57. Plaintiff **SMITH** was immediately rejected for all jobs she applied for despite Defendant **UTRGV**'s practice to refer terminated **UTRGV** employees for other positions internally.

58. On July 11, 2018, Plaintiff **SMITH** sent an email to **MICHAEL JAMES**, **UTRGV**'s Chief Human Resources Officer, explaining her concerns about being denied

employment at **UTRGV** and requested a meeting.

59. On July 11, 2018, **JAMES** responded to Plaintiff **SMITH** and told her "I encourage you to seek employment outside of **UTRGV** for the immediate future. Perhaps, in the future, you may be considered for employment with **UTRGV**, once you have had a sustained successful employment experience elsewhere." Plaintiff **SMITH** began working for the McAllen Independent School District on October 21, 2018, through present and has shown "successful employment experience elsewhere."

60. Plaintiff **SMITH** continued to apply for employment with **UTRGV** through December 2019, and was immediately rejected for each job and has applied for jobs thereafter wherein she was rejected for the jobs.

61. Plaintiff **SMITH** filed a Charge of Discrimination which is incorporated herein.

### VII. Cause of Action - Violation of Section 504 of the Rehabilitation Act of 1973 by Defendant The University of Texas - Rio Grande Valley

62. Plaintiff **SMITH** incorporates Sections V. and VI. as if fully set forth herein.

63. It is unlawful to exclude from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance, including the processing of applications for employment and hiring. 29 U.S.C. § 794(a); 10 C.F.R. § 4.122(a), (c)(1) and (2).

64. It is unlawful to limit, segregate, or classify applicants or employees in any way that adversely affects their opportunities or status because of a disability, such as "blacklisting." 10 C.F.R. § 4.122(b).

65. Defendant **UTRGV** violated 504 of the Rehabilitation Act by (1) limiting,

segregating, or classifying (or "blacklisting") Plaintiff **SMITH** when she sought employment with **UTRGV**, and (2) processing Plaintiff **SMITH**'s applications for employment with **UTRGV** in a discriminatory fashion; both in violation of Section 794(a) of the Rehabilitation Act. Plaintiff asserts that (1) she is an individual with a disability; (2) who is otherwise qualified; (3) who applied for a position in a program or activity receiving Federal financial assistance; and (4) that she was discriminated against solely by reason of her or his disability.

66. Defendant **UTRGV**'s actions as described above were and are the direct and proximate causes of Plaintiff **SMITH**'s damages in this case.

67. Plaintiff **SMITH** seeks reinstatement, lost pay, back pay, compensatory damages, liquidated damages, reasonable attorney's fees, expenses, costs, pre- and post- judgment interest, and any other statutory or equitable relief to which she may be entitled.[1]

### VIII. Cause of Action - Violation of Title I of the ADA by Defendants Mercy Azeke, Vera Ruiz, Michael James and Guy Bailey

68. Plaintiff **SMITH** incorporates Sections V. and VI. as if fully set forth herein.

69. It is an unlawful employment practice to discriminate against an otherwise qualified individual with a disability by limiting, segregating, or classifying a job applicant or employee in a way that adversely affects their opportunities or status, such as "blacklisting." 42 U.S.C. § 12112(b)(1); 29 C.F.R. § 1630.5.

70. It is unlawful to discriminate against any individual because such individual has opposed any unlawful act or practice under the ADA. 42 U.S.C. § 12203(a); 29 C.F.R. § 1630.12(a).

---

[1] Plaintiff is not seeking damages for lost pay or back pay as a result of her termination.

71. It is unlawful to coerce, intimidate, threaten, harass or interfere with any individual's exercise of the rights protected by the ADA, including employment. 42 U.S.C. § 12203(b); 29 C.F.R. § 1630.12(b).

72. Defendants **MERCY AZEKE, VERA RUIZ, MICHAEL JAMES,** and **GUY BAILEY**, each violated the ADA by: (1) limiting, segregating, or classifying (or "blacklisting") Plaintiff **SMITH** in an adverse way when she sought employment with **UTRGV** in violation of Section 12112(b) of the ADA; (2) by retaliating against Plaintiff **SMITH** when she applied for employment with **UTRGV** in violation of Section 12203(a) of the ADA; and (3) by coercing, harassing, and interfering with Plaintiff **SMITH**'s exercise of her right to employment when she applied for jobs with **UTRGV** in violation of Section 12203(b) of the ADA. Their conduct is ongoing and they continue to violate the law.

73. Defendants **AZEKE, RUIZ, JAMES,** and **BAILEY**'s actions as described above were and are the direct and proximate causes of Plaintiff **SMITH**'s damages in this case.

74. Plaintiff **SMITH** seeks injunctive relief against Defendants **AZEKE, RUIZ, JAMES,** and **BAILEY**, for the ongoing violation of the ADA.

## IX. Prayer

WHEREFORE, PREMISES CONSIDERED, Plaintiff **KEELY R. SMITH** respectfully prays that upon trial of this Court, she recover from Defendant **UTRGV** the following:

a.  Enjoin Defendants **AZEKE, RUIZ, JAMES,** and **BAILEY**, from their ongoing violation of Plaintiff **SMITH**'s rights under Title I of the ADA;

b.  Enter declaratory judgment that Defendant **UTRGV** violated Plaintiff **SMITH**'s rights under Section 504 of the Rehabilitation Act;

c.  Reinstate Plaintiff **SMITH** in a comparable position to the one she would have

      had absent the improper acts of any or all of the Defendants, or front-pay in lieu of reinstatement;

d.      Award Plaintiff **SMITH** lost pay or back-pay with prejudgment interest pursuant to the remedies provided by 504 of the Rehabilitation Act;

e.      Award Plaintiff **SMITH** compensatory damages for her past and future pecuniary and nonpecuniary losses pursuant to the remedies provided by 504 of the Rehabilitation Act;

f.      Award Plaintiff **SMITH** reasonable attorney's fees, expenses including litigation expenses and costs, from Defendants;

g.      All damages allowed under Plaintiff **SMITH**'s statutory cause(s) of action arising from the allegations asserted herein, including statutory interest, prejudgment interest and post-judgment interest as provided by law;

h.      Enter a judgment in favor of Plaintiff **SMITH**; and

i.      Grant Plaintiff **SMITH** any such further and other equitable relief to which she may be entitled.

                                                               Respectfully submitted,

                                                                */s/ Katie Pearson Klein*
                                                                KATIE PEARSON KLEIN
                                                                State Bar No. 11561900
                                                                Southern District No. 7577
                                                                WILLIAM D. MOUNT, JR.
                                                                State Bar No. 14602950
                                                                Southern District No. 14992
                                                                DALE & KLEIN, L.L.P.
                                                                1100 E. Jasmine Ave. Ste 202
                                                                McAllen, Texas 78501
                                                                (956) 687-8700/(956) 687-2416 (fax)
                                                                office@daleklein.com
                                                                ***Attorneys for Plaintiff Keely R. Smith***